May it please the court, my name is Lloyd Tooks and I represent the plaintiff appellant in this case, Mr. Harry Burnett. Mr. Burnett's claim is one of violation of the Privacy Act. Mr. Burnett works for the DEA. Sometime in the past he filed an employment discrimination complaint against the DEA and as is true in the federal sector that complaint went through an administrative process that included a hearing before an administrative judge. After the hearing the judge rendered a decision on that complaint finding against Mr. Burnett no discrimination. In that decision the judge in the conclusion of that decision made the following statement. I further find that complainant's attempt to minimize the impact of his deposition testimony after he had an opportunity to reflect on it and realize how damaging some of his statements were were not persuasive or credible. The decision was rendered April 30, 2003. Over five months later the DEA, someone at the DEA, unnamed made a telephone call to a prosecutor for whom Mr. Burnett as a part of his duties and responsibilities was about to testify in a criminal case about a substance he had analyzed. He made a telephone call saying some credibility information concerning Mr. Burnett has come to light. The prosecutor then asked to send me the information. The DEA person, whoever it was, sent the administrative judge's decision based on the argument that that was credibility information and information that based on Giglio versus the United States should be disclosed to defense counsel. Our contention is that that disclosure the oral statement, the telephone call and subsequent disclosures violated the Privacy Act and we would respectfully disagree with the district court in finding otherwise. There are at least three areas of error that I would like to submit to the court that the district court made. The first area of error was the district court's acceptance of facts that had no evidentiary support. The district court accepted as fact argument of counsel. The first and most obvious example of this was the district court said, found it excerpt of record page seventy seven lines five through six, in the decision the ALJ noted that plaintiff delivered inconsistent testimony and that he doubted plaintiff's credibility. Absolutely the ALJ did not note any inconsistent testimony in his decision. There was in fact no evidence to support or clarify or give any understanding to the statement I read to you about attempting to minimize deposition testimony, none whatsoever. But there was no inconsistent testimony noted in the decision. And this is crucial because the district court I believe when it determined that the record in this case, the record in the system of records was the AJ's decision included that misunderstanding. A second acceptance of fact based on nothing but the argument of counsel was the district court's statement that based on plaintiff's record as it existed when the disclosures were made the court finds it was reasonable for the USDA DEA to find that statements in the ALJ's decision indicated a finding of plaintiff's lack of candor and to treat the record accordingly. There is no evidence in the record that the DEA treated the administrative judge's decision as a finding of lack of candor. Basically as I said when the unknown person called the assistant U.S. attorney, his name was Krause, he merely said some credibility information has come to light. Also Mr. Krause concluded before he disclosed the information to defense counsel merely that the evidence was favorable to the defense because it could be used to impeach Mr. Burnett. And of course thereafter the DEA investigated what it alleged was the basis of the judge's decision and its office of or board of professional responsibility found there was no lack of candor and Mr. Burnett just attempted to respond to questions as best he could during his deposition testimony. So examples of situations where the judge accepted as fact arguments of counsel that were not supported by any evidence and indeed in some instances contradicted by evidence. The second area of error I would respectfully submit your honor is even more important when I believe it was the failure of the district court to recognize the difference between what an employee is obligated to self-disclose when the prosecutor comes to him and says you're going to be a witness for me in the criminal case you know what about your background? The Giglio policy of the Department of Justice requires the employee to self-disclose information about himself or herself that could be impeachment information and could be used as Giglio information. That is referred to in the Giglio policy initially. Broad scope of information, general. The second category of information which is by no means coterminous with the first is what an agency is allowed to disclose on an employee without the employee's permission. And the Giglio policy specifies what that information is. There are three categories of information only. Those three categories are findings of misconduct that reflects upon the truthfulness and bias of the employee including a finding of lack of candor. Past or pending criminal charge brought against the employee and any credible allegation of misconduct that reflects upon the truthfulness or possible bias of the employee that is the subject of a pending investigation. Your argument it seems to me rises or falls on whether the thing that you quoted at the beginning counts as a finding of lack of candor because if it does then the written policy would cover its disclosure. I would it doesn't rise or fall on that because the policy I'm going to just to submit to the court is contains a substantive aspect and a procedural aspect. The Giglio policy basically says, indicates that first the prosecutor communicates with the prospective witness employee and in that interchange it generally gets all the information he or she needs as a prosecutor to determine whether there's Giglio information. The policy then states if the prosecutor decides he or she needs to the prosecutor may make a request of the agency for information. So under the policy an agency may not unsolicited give information. So that violated the policy. This telephone call to Krauss violated the policy both procedurally and substantively. And I think that telephone call probably epitomizes what the Giglio policy was intended to prohibit. Some employee in an agency calling a prosecutor and saying I got something on one of your witnesses and then they run with it. It creates a Giglio situation. So it is for that reason, Your Honor, that I would not go... I don't understand what you mean by creates a Giglio situation. If the negative information exists in the files of the agency they're not creating the situation. The question is how, if at all, can they communicate that to a prosecutor who is charged with giving certain information to defense counselors as a constitutional matter. First, they can communicate it only upon request. That's number one, per the policy. Secondly, I said creates a Giglio situation when the information submitted does not fall within one of the three categories I just spoke about. Okay, that's the part that I was saying earlier, whether it's a finding of lack of candor. Well, in this particular situation, although the agency never made a finding of lack of candor, the defense counsel argued that that's what the agency based it on. So first, if the court would throughout this read what the evidence was. This motion for summary judgment against the plaintiff was based on argument of counsel. And we have, ironically, the plaintiff and the DEA agreed on two crucial facts. Number one, that the parameters of information that the DEA was permitted to disclose included only those three categories of information. And I say we agreed on it because if you read the, what I call form letter, two form letters we have in the record that were sent out, they're found at excerpts of record pages 57 through 59 in stating that the DEA was complying with its requirements under the policy in those form letters, it states those three categories. The records were searched for those three categories of information. If it were a reasonable inference that that quote that you read at the beginning showed a lack of candor, a lack of credibility, did the DEA violate the Privacy Act in providing that information to the U.S. Attorney's Office? Yeah, as I responded to Judge Graber's question, providing an unsolicited liaise. You said that violated the Giglio policy, but did that violate the Privacy Act? Yes. This violates the Privacy Act for this reason. The defense argued that these disclosures were routine use. My submission to the court is you cannot have a routine use of information that violates the policy that regulates the use of that information. But we're saying that there's an inference that the... I was trying to answer another question. I'm sorry I misspoke. But I want you to understand why we are not basing our claim on a violation of the Giglio policy. What we're saying is this use, if, I'll first say, if it was a violation of the Giglio policy, this use, it could not be a routine use. That's why it all folds into itself. If, in fact, and I know you don't concede this, but if the material that was disclosed does constitute a finding of lack of candor and, therefore, is within the Giglio policy, does that policy describe a routine use? Or, alternatively, does it describe something that's found in another exception, which is to give to the inter-agency exception, which permits giving over to another entity when there's a law enforcement purpose? Well, I thought we were talking about the inter as opposed to the intra-agency. Yes, we are. There is a separate statutory exception for inter-agency which is separate from routine use. I'd like you to comment, if you're going to comment on routine use, use is a word compatible, which doesn't mean the same as, it just means conforming or not conflicting with. But isn't routine use all right? Why isn't it routine? Well, our only argument is that this was not a routine use because it wasn't a lack of candor. First, Your Honor, the issue is whether you are going to make that finding ob initio because the agency did not make that finding based on the evidence. And I'm out of time. You're welcome to save the remainder for rebuttal. We'll hear from the camera. Good morning, Your Honors. Beth Levine, Assistant United States Attorney on behalf of the government. I think that I'm not sure what Judge Ikuda was getting at, but I think I do, and I think really the main point here is that this is a Privacy Act case. It's not a criminal giglio case. And one of the important things that has to be considered here because it's a Privacy Act case is that, as the Supreme Court's indicated, there is a very big difference between trying to figure out what potential impeachment information is before the trial and what determination a judge might make post-trial as to whether, yes, certain information was giglio information and it was error for the prosecutor not to disclose. And the Supreme Court has said that this issue of materiality, which is important to the  is inevitably an imprecise standard and as a result a prudent prosecutor is going to have to err on the side of disclosure when we're talking about something that is pre-trial. So really what you have to do here is look at what the elements are for a Privacy Act violation. The applicable provision in the Privacy Act that applies, excuse me, the applicable provision of the Privacy Act is Section G4 and the elements that are in that provision are first of all that you have a disclosure of a record that's in a system of records, second, you have no written consent of the individual about to whom the record pertains, three, none of the twelve exceptions that are under Section B apply and then the next two are also extremely important and they are whether the agency acted in a manner that was intentional or willful and the fifth one is that the individual proves actual damages. And the terms that are used here, intentional or willful, are terms of art and there are cases including Ninth Circuit cases, Covert v. Harrington, a case that was actually cited by the appellant in his brief, defines intentional or willful as something that is greater than gross negligence or committing an act without grounds for believing that the at least under the circumstances at the time that the disclosure was unlawful and also that there was no flagrant disregard for, in this case, Mr. Burnett's rights under the Privacy Act. And here you have a situation where the assistant United States attorney is advised on the eve of trial, literally, that there is some information pertaining to the credibility of one of the witnesses for the prosecution, that is Mr. Burnett. And what the AUSA did at that point was obtain that information. Another thing that's extremely important that he did do prior to trial was consult with the U.S. Attorney Office's Giglio Henthorne coordinator and that it was discussed with the person who was supposed to be the expert in the office. And given what was available to the AUSA at that time, again, it's the eve of trial. The trial was the next day. Also, the trial lasted just one day. So this wasn't really a situation which was really amenable to the AUSA if he thought that this was something that maybe did not need to be disclosed, could be produced to the judge in camera for consideration. Ms. Levine, could I interrupt you for a moment? I'm sort of catching up with you here. You're arguing the civil remedies section of 552A, is that correct? I don't remember this argument in the brief, so I'm just catching up. Are you saying there has to be a issuing of intent or willfulness to bring an action for violation of the Privacy Act? With regard to what the allegations are in this case, yes, Your Honor. When you're talking about an improper disclosure, that would G1 is saying, can you just cite, it says, when an agency fails to comply with any other provision of this section in the Privacy Act, then the individual may bring a civil action. And when I look at G4, that just seems to be additional damages if the agency acted in a manner which was intentional or willful. Your Honor, I believe that that question that you're asking is something that was addressed by the Supreme Court in a case that was actually cited in the government's papers in the district court, which was Doe v. Chow. The citation there, although it is in the record below, is 540 U.S. 614. Actually, that case dealt with the issue of whether somebody who is alleging an improper disclosure, or it certainly applies to the situation where somebody is alleging an improper disclosure under the Privacy Act, that they must show actual damages. And in analyzing why a plaintiff who is making such a claim has to prove actual damages, they also discussed that part of the G4 includes not only that, but also that the plaintiff must show that the act by the discloser was something that was intentional and willful. In other words, the section is read in its entirety, not as an issue of these are additional remedies. That is the only remedy that somebody in this situation has. It's an action for damages in the same way that you might have a tort claim. I have a question about the routine use, which is your argument in part. Routine use in the list of exceptions, I guess, talks about Sections A-7 and E-4-D. And how does this record meet those two sections? A-7 requires that routine use be the use of the record for a purpose which is compatible with the purpose for which it was collected. And the other subsection that is noted requires that it be published in the Federal Register a list of the routine uses, including categories of users. Does this information meet those standards? I believe it does, Your Honor. And actually, again, there were other exceptions that were addressed below and also by the District Court. And B-1 as well, actually. But if you would like me to address the question of routine use first, I certainly can. Yes. Okay. I apologize that these additional citations did come in yesterday, but I think there was some question that had been raised in the reply brief that there was no system of records that was cited. And I did cite that in the 20HA letter. And that's there is a system of records for DEA that applies here, and that's at 52 Federal Register 47182. That doesn't specifically mention the GIGLIO information. I think it says routine uses for law enforcement and regulatory purposes. That's correct, Your Honor. But the fact that under the GIGLIO policy, which is a Department of Justice policy, that an agency must be disclosed, and it must be collected to be disclosed to the prosecutor for a law enforcement purpose, which is the prosecution of a criminal defendant. To give a constitutionally adequate trial. That's correct, Your Honor. And so that's why this system of records is the applicable system of records. And what you have here is a situation where you have a document that's been collected, the administrative judge's decision for the purpose of investigating whether, and this is now the DEA OPR, which then gets their investigation then gets has a report done and they refer it to the Board of Professional Conduct for evaluation. And so the matter is being investigated by DEA, so you do have an allegation. Excuse me. The question is then what happens in the interim if you have the Office of Professional Responsibility looking into an allegation? In the meantime, unless and until the person is exonerated, your position, I take it, is that you have to turn this over to law enforcement. But then once they're exonerated, as he was here, I assume it stops. Well, there may be other circumstances, which I don't think we have to address in this case, that might apply such that there should still be a disclosure. But the disclosures that were made before there was a determination by the Office of, excuse me, the Board of Professional Conduct that the inconsistent statements that were made during the administrative process, the EEO administrative process, that there was not sufficient information to lead to a conclusion that there was misconduct in the form of lack of candor. Now, that's a determination that's not necessarily the same determination that's being made by the administrative judge. But there is that investigation that's sitting out there. It's pending, and under the DOJ Giglio policy, there's an obligation to turn that stuff over as potential impeachment information. What's your response to the argument that procedurally each prosecutor has to ask each time? There is nothing to indicate in the record that that had not been done as a matter of course in the particular case where the AUSA did disclose the ALJ's decision to the Defense Council. What you have here again under the Giglio policy is that the agency has, in this case DEA, has a continuing obligation to turn over to the AUSA's anything that might come up. And in this particular situation, apparently it did come up at the point where the DEA still had the opportunity to notify the AUSA that there was this credibility issue out there. I mean, once the matter gets referred to OPR, an investigation is opened up, and then if there is not the obligation before, there's certainly the obligation then to turn that material over to the AUSA. Just briefly, I did want to point out that again, I did provide some additional citations for the proposition that what you did have here between the DEA and the AUSA was a B-1 disclosure, which was need to know. The district court did not accept that argument that was made by the government before the district court, but I do believe based on the additional citations that we did cite that that would be an applicable exemption. And even if it's not, you do have the B-7, which was addressed by the district court in his decision. You do have, in the form of the Giglio policy, the Attorney General making a written request for specific information, i.e., potential impeachment information, and also it describes what the reason is for needing to make the disclosure. Your time has expired, if you'd like a moment to sum up. Yes, Your Honor. I did also realize that there was another issue that was presented on appeal. Mr. Tooks did not discuss that at any point. That's the retaliation argument, so I will not address that. But basically what you have here, as I said, is a Privacy Act case, and what you have is what I believe, even if you needed to address, even if you needed to make this conclusion as to whether there was an applicable exemption that applied, I think you can do it here under any of those exemptions that were mentioned, 1, and 7, and 3, for purposes of the DEA, to the AUSA, and 3, as to the AUSA, to Defense Counsel. And reasonable minds can differ. You have the eve of the trial, you have something there that is just the beginning of an investigation, but you have the allegation by a judge. The AUSA did what he could under the situation, and so you don't have any willful, intentional or willful violation here, and there certainly hasn't been any addressing of any actual damages as well. Thank you, Counsel. I believe you have a little bit of time remaining for rebuttal. Quickly, Your Honor. With respect to the last issue about the allegation of no intentional or wrongful conduct, in the trial court, since Ms. Levine wasn't in the trial court, another AUSA was in the trial court, in the trial court that issue was conceded. In the judge's opinion, ER 77, the judge says, beginning at line one, defendants do not contest that the ALJ's decision is a record within a system of record, system of personnel records, nor do they deny that the disclosures were made knowingly or intentionally and without plaintiff's consent, end of quote. So Ms. Levine is raising an issue now that was conceded in the district court. Also, Ms. Levine, again, is making arguments based on something other than the record. I'm trying to stick with the record and I would with what's in the record. There is no evidence of when an investigation began or when it ended. And since the defense in this case was arguing that the disclosures came within an exception, the burden is on the defense to prove that. So there's no good defense to say the plaintiff hasn't shown us when an investigation began or when it ended. Therefore, under the third category of items that could be disclosed, there is no justifiable reason for a Privacy Act defense in this case. Also, Ms. Levine did submit a congressman's statement about inter-agency versus intra-agency and I got it late yesterday afternoon. I did not have time to do the research. I can only say in the recesses of my old mind, I believe that you only look at legislative history if the statute itself doesn't provide you with an answer. And looking at the statute, as the judge looked at the statute, ER 77 through 80, he saw in the statute that the agencies are separate. So this is inter-agency, not intra-agency. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Cudahy , Graber, Ikuta